IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MARILYN MCCLELLAND | § | |
| Vs. | § | CIVIL ACTION NO. 6:05CV418 |
| JESSIE JOHNSON, ET. AL. | § | CONSOLIDATED WITH 6:05cv422 |

MEMORANDUM OPINION AND
ORDER

     Plaintiff, Marilyn McClelland, proceeding pro se and seeking to proceed *in forma pauperis*, filed the above-styled lawsuit on November 2, 2005.  On June 6, 2006, the undersigned conducted a hearing to consider Plaintiff's Motion to Proceed *In Forma Pauperis* (docket entry #2), Motion for Appointment of Counsel (docket #5), and to clarify Plaintiff's claims, as authorized by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff testified at the hearing concerning her finances, her attempts to retain counsel, and the facts underlying the lawsuit.  The case was transferred to the undersigned with Plaintiff's consent on June 8, 2006.  For the reasons assigned below, the undersigned finds that Plaintiff's Motion to Proceed *In Forma Pauperis* should be granted and Plaintiff's Motion for Appointment of Counsel should be denied.  Further, the Court finds that the lawsuit should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction over the subject matter and Fed.R.Civ.P. 12(b)(6)  for failure to state a claim upon which relief may be granted.

*Procedural History*

In this case, Plaintiff initially filed two separate lawsuits involving two individual complaints. In her first complaint, filed on November 2, 2005, Plaintiff alleged that she filed harassment charges against Oscar Birdow, the former mayor of Cuney, Texas, and that Birdow retaliated against her by having her arrested. Plaintiff further alleged that on September 23, 2005, she was arrested without a warrant by Officer Michael Trawick. According to Plaintiff, her arrest was ordered by defendants Brenda Lankford and Mayor Jessie Johnson. Plaintiff stated in her complaint that she was seeking relief in the form of back pay and reinstatement.

In Plaintiff's second complaint, also filed on November 2, 2005, Plaintiff alleged that on September 23, 2005 Officer Michael Trawick entered her home and asked, "what is all this water doing in your yard." According to Plaintiff, she looked outside and told the officer that she did not see any water and that she needed to go back inside and lie down because she was ill. Officer Trawick then told Plaintiff that he would be back. Shortly thereafter, Officer Trawick returned to Plaintiff's home and arrested her without a warrant. With regard to relief, Plaintiff stated in her complaint that she wanted to have her water turned back on and her water meter replaced. In addition, she requested "compensation for suffering and lying in jail . . . ."

Neither of Plaintiff's complaints set forth a cause of action or a basis for federal court jurisdiction. Accordingly, the undersigned issued Orders on November 10, 2005, in both cases, directing Plaintiff to file amended complaints setting forth her basis for federal court jurisdiction, stating her legal basis for filing the lawsuits, and stating specific facts supporting her claims against each defendant named in the complaints. After Plaintiff failed to file amended complaints as ordered, Reports and Recommendations were issued on January 9, 2006 recommending that the

complaints be dismissed for failure to prosecute. In response to the Reports recommending dismissal of her lawsuits, Plaintiff submitted a letter on January 17, 2006, stating "[d]ue to illness from complications of gall bladder after hospitalization, I wish to continue to [sic] with my case as soon as possible . . . ." The letter was construed as a motion for extension of time, and the motion to extend was granted on January 23, 3006.

On February 9, 2006, Plaintiff filed identical amended complaints in her two lawsuits. Plaintiff's cases were consolidated on February 21, 2006. In her amended complaints, Plaintiff alleges that on September 23, 2005, Officer Trawick entered her home and asked her why there was water outside her house. Plaintiff then looked outside and said that she did not see any water and that she was ill and needed to rest. Officer Trawick allegedly told Plaintiff to go back inside and that he would come back later. After a few minutes, Officer Trawick returned and arrested Plaintiff. Officer Trawick allegedly told Plaintiff that he had spoken with Mayor Johnson and had been instructed to arrest Plaintiff if she refused to pay a fine. Plaintiff further alleged in her amended complaint that Brenda Lankford sent the water superintendent to Plaintiff's home to remove her water meter. Plaintiff asserted that the water meter was bought by her mother and should be replaced. Plaintiff's claims were still unclear, and a hearing was scheduled for June 6, 2006 on her motion to proceed *in forma pauperis* and her motion for appointment of counsel. At the hearing, Plaintiff had the opportunity to testify regarding the facts of her claim and explain her allegations against each individual defendant.

*Motion to Proceed In Forma Pauperis*

With respect to her finances, Plaintiff testified at the hearing that she currently has no income. Plaintiff became ill and was unable to work after she was fired from her job as municipal

court clerk on August 4, 2004. When she recovered, Plaintiff began working on an as-needed basis as a secretary for a pharmaceutical company. Plaintiff stated at the hearing that she was denied unemployment and disability benefits. Plaintiff inherited her mother's house, and currently lives there with her grown son. Plaintiff claims that she has no savings, does not own a car, and has nothing of value that she could sell in order to raise money for an attorney. The undersigned finds that Plaintiff's Motion to Proceed *In Forma Pauperis* (docket #2) should be granted.

*Motion for Appointment of Counsel*

_____ Plaintiff does not have a constitutional or a statutory right to the appointment of counsel in a civil case. The constitutional right to counsel found in the Sixth Amendment applies only to criminal prosecutions. *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801 (1993). Construing the complaint literally, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983. "There is no automatic right to the appointment of counsel in a section 1983 case. Furthermore, a district court is not required to appoint counsel in the absence of 'exceptional circumstances' which are dependent on the type and complexity of the case and the abilities of the individual pursuing that case." *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987). While the Court must be sensitive toward and innovative in dealing with problems faced by pro se litigants, the Court should also remember that the movant has the burden of persuasion with regard to the application for appointment of counsel. Any appointed counsel will serve entirely without compensation unless the suit is successful and attorney's fees are awarded. Additionally, once appointed, counsel must pursue the claim, irrespective of whether his or her professional judgment is that the claim has little or no chance for success.

With regard to Plaintiff's financial situation, it appears from her hearing testimony that she

is unable to pay for representation on a non-contingent basis. Plaintiff stated, however, that she has made no attempt to hire a lawyer on a contingent fee basis. Moreover, Plaintiff appears capable of articulately representing herself. Plaintiff successfully negotiated filing this lawsuit. During the hearing on Plaintiff's motions, she appeared poised and she communicated articulately and effectively with the undersigned. With regard to Plaintiff's educational background, she completed one and a half years of college and earned a secretary's diploma from a business college. Plaintiff also indicated to the undersigned that she was prepared to move forward with the case, pro se, if an attorney was not appointed for her. Based on her hearing testimony, Plaintiff has failed to show exceptional circumstances warranting the appointment of counsel. The undersigned has reviewed the complaint and is of the opinion that the case is not unduly complicated requiring the appointment of counsel. *See Robbins v. Maggio*, 750 F.2d 405 (5th Cir. 1985); *Ulmer v. Chancellor*, 691 F.2d 209, 212-13 (5th Cir. 1982). Therefore, the undersigned concludes that Plaintiff's Motion for Appointment of Counsel should be denied.

*Hearing Testimony*

In the present case, Plaintiff testified at the hearing that her primary allegation is defamation of character by *The Jacksonville Daily Progress*. Plaintiff contends that in July or August of 2004 *The Jacksonville Daily Progress* printed an article that damaged her reputation by wrongfully characterizing her as a felon. Plaintiff claims that the article contained defamatory statements made by Oscar Birdow as an act of retaliation against Plaintiff.

In March of 2001, Plaintiff was employed by the City of Cuney as municipal court clerk. Plaintiff alleges that during the course of her employment she became aware of corruption among city officials, especially Police Chief Oscar Birdow. Plaintiff contends that incriminating

information she gave Mayor Billy Roberts concerning Birdow contributed to Roberts' decision to fire Birdow from his position as chief of police in late 2002. Birdow went on to become mayor of Cuney in 2004. Plaintiff contends that after he was elected in May, Birdow accused Plaintiff of poor work performance at a staff meeting attended by Plaintiff, Chief of Police Larry Ledford, and City Secretary Brenda Lankford. On July 22, 2004, Plaintiff filed a harassment complaint against Birdow. Plaintiff's complaint was filed through the City of Cuney.

In 2004, Plaintiff learned through a city council member that Police Chief Larry Ledford was investigating Plaintiff's criminal background. Plaintiff is unaware of who ordered the background check or what exactly was revealed. On July 24, 2004, Plaintiff was arrested by Ledford for probation revocation arising out of a 1992 conviction. In 1992, Plaintiff was convicted of theft by check in Smith County and placed on probation for eighteen months. Plaintiff claims that she was unable to afford the probation fees and therefore failed to pay them. As a result, Plaintiff was convicted of theft by check in 2004 and served thirty days in the Smith County jail.

According to Plaintiff, when she was released from jail after serving her thirty day sentence, she discovered that she had been fired from her job and that *The Jacksonville Daily Progress* had printed an article featuring an allegedly defamatory quote from Mayor Birdow. In his quote, Birdow allegedly referred to Plaintiff as a felon and stated that she would be in jail for at least six months. Plaintiff contends that this was a misrepresentation of the facts and that the newspaper should have researched the mayor's statements before printing them. Plaintiff was only in jail for thirty days on a misdemeanor charge, and she claims that her reputation was damaged by the mayor's remarks characterizing her as a felon. Plaintiff believes that the mayor's statement was a means of retaliation for the 2004 harassment charge Plaintiff filed against him.

Plaintiff further alleges that defendant Brenda Lankford, city secretary and Birdow's sister-in-law, also made a statement in the article printed by *The Jacksonville Daily Progress*. Plaintiff contends that Birdow and Lankford were responsible for having the article printed in the newspaper. According to Plaintiff, Lankford schemed with Birdow to find a way to have Plaintiff fired from her position as municipal court clerk. Additionally, Plaintiff alleges that city council member Calversie Patton voiced her opinion to city employees and officials that Plaintiff should not be allowed back to work because she had been arrested and imprisoned for thirty days. Plaintiff claims that Patton made these statements against her even though Patton was aware of the corruption that existed in the City. Plaintiff contends that her thirty day imprisonment was insignificant in comparison to all of the corruption taking place among city officials in Cuney, and that it was unfair for her reputation to be damaged as a result of her arrest for a misdemeanor offense.

Plaintiff also complains about actions taken against her for the nonpayment of her water bills. Plaintiff believes that the incidents surrounding her water problem are indicative of the corruption taking place in the City of Cuney. In September of 2005, Plaintiff's water was turned off by the City for nonpayment. First, Plaintiff contends that Lankford exhibited favoritism by ordering the City to turn off Plaintiff's water for nonpayment while Lankford's brother-in-law, Birdow, never had his water turned off in spite of his alleged history of nonpayment. Plaintiff claims that she knows of Birdow's failure to pay his water bill because she collected the water payments when Lankford was out.

Next, Plaintiff alleges that on September 23, 2005, after her water had been turned off, Officer Michael Trawick entered her home and asked where all of the water outside her house had come from. Plaintiff looked outside and told him that she did not see any water at all and that she

was ill. Plaintiff testified that she never turned her water back on after the City had turned it off, and it must have been turned on by someone else while she was away from her home. Plaintiff claims that Officer Trawick told her to go inside and that he would come back shortly. Allegedly, Officer Trawick returned a few minutes later without a warrant and said that Mayor Jessie Johnson had instructed him to arrest Plaintiff if she refused to pay a fine. Plaintiff was arrested and spent three days in jail. Plaintiff alleges that her rights were violated as a result of her arrest, and she is suing Officer Trawick for arresting her without a warrant. In addition, Plaintiff is also suing Mayor Johnson for allegedly giving the order to have her arrested. Finally, Plaintiff is suing the City of Cuney for the alleged violation of her rights by city officials.

*Discussion and Analysis*

In the present case, Plaintiff's primary allegation is defamation of character. Plaintiff contends that an article printed in *The Jacksonville Daily Progress* featured false statements made by Oscar Birdow and Brenda Lankford that caused Plaintiff's reputation to be damaged. Plaintiff further alleges that Calversie Patton, a city council member, damaged Plaintiff's reputation by telling coworkers that she should not be allowed to return to work after serving time in jail.

Federal courts are courts of limited jurisdiction. Federal courts have only the power authorized them by Congress pursuant to Article III of the Constitution. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331 (1986); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997). "Under our federal constitutional scheme, the state courts are assumed to be equally capable of deciding state and federal issues." *Marathon Oil Co. v. Ruhgras*, 145 F.3d 211 (5th Cir. 1998) (overruled on other grounds, *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 119 S.Ct. 1563 (1999)). If Congress has not conferred jurisdiction upon the

federal courts, the state courts become the sole vehicle for obtaining initial review of some claims. *Id.* (citing *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S.Ct. 418, 425 (1971)).

In the present case, Plaintiff has failed to allege facts showing a basis for federal court jurisdiction. Defamation is a state law claim with no independent basis for jurisdiction in the federal courts. *See DeLeon v. City of Dallas*, 141 Fed. App'x 258, 260 (5th Cir. 2005). In addition, there is no diversity of citizenship among the parties in this case. Consequently, Plaintiff's defamation claims against *The Jacksonville Daily Progress*, Birdow, Lankford, and Patton should be dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

Also included in Plaintiff's lawsuit are claims arising out of the nonpayment of her water bill. To the extent that Plaintiff claims that defendants Brenda Lankford, Officer Michael Trawick, and Mayor Jessie Johnson punished her for the nonpayment of her water bill, Plaintiff may be seeking relief pursuant to 42 U.S.C. § 1983. Section 1983 states that every person who acts under color of state law to deprive another of constitutional rights shall be liable to the injured party. More specifically, § 1983 may be used to sue city officials who violate the constitutional rights of others while exercising the power afforded by their official positions. *Jennings v. Patterson*, 488 F.2d 436, 441 (5th Cir. 1974) (holding that the failure of the City and its governing officials to dismantle a fence restricting the use of a public road constitutes state action proscribed by § 1983). In this case, Plaintiff contends that three city officials used the authority inherent in their respective positions of city secretary, police officer, and mayor to deprive Plaintiff of her constitutional rights. In addition, Plaintiff also alleges that the City of Cuney should be held liable for the actions of its city officials.

First, Plaintiff claims that Lankford, acting in her official capacity as city secretary, exhibited favoritism by ordering the City to turn off Plaintiff's water for nonpayment even though Mayor

Birdow's water was allegedly never turned off when he frequently did not pay his water bill. Plaintiff is also suing Lankford for allegedly contributing to *The Jacksonville Daily Progress* article and conspiring with Birdow to find a way to have Plaintiff fired.  To prevail on a claim of conspiracy under § 1983, a plaintiff must allege and prove that there was an agreement among defendants to commit an illegal act and that there was an actual deprivation of his constitutional rights in furtherance of that agreement.  *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982).  Mere conclusory allegations of a conspiracy cannot support a claim under § 1983.  *Id.*  In this case, Plaintiff does not allege a factual basis to substantiate her claims, but offers only conjecture and speculation that Lankford conspired against her to violate her rights as an act of retaliation.  Broad assertions made without supporting evidence constitute a failure to state a claim under § 1983.  *See Elliot v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1983).

More importantly, Plaintiff has not alleged the violation of a constitutional right.  In this Circuit, before a plaintiff may maintain a civil rights suit, he must show an abuse of governmental power that rises to a constitutional level.  *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert denied*, 451 U.S. 1019 (1981).  A civil rights plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case.  *Maine v. Thiboutot*, 448 U.S. 1 (1980); *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982).  Plaintiff has not only failed to allege facts showing a conspiracy among the defendants to deprive Plaintiff of her rights, but she has also failed to produce evidence of an actual violation of her constitutional rights.  Accordingly, Plaintiff's allegations against Lankford should be dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

_____Next, Plaintiff is suing Officer Trawick for arresting her without a warrant.  In order to

prevail on a claim for relief under § 1983, Plaintiff must show that she has been deprived of a constitutional right and that the defendant violated her rights while acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733 (1978). Rather than being limited to actions taken by officials pursuant to state law, action taken "under color of" state law also includes the "misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Brown*, 631 F.2d at 411 (5th Cir. 1980) (quoting *Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482 (1961)) (holding that even though state law did not afford the mayor the right to withhold employees' checks, he still acted "under color of state law" because his actions were achieved through the use of his authority as mayor). In this case, Plaintiff contends that Officer Trawick abused his power as a police officer by unlawfully arresting Plaintiff without a warrant.

According to Plaintiff, her constitutional rights were violated as a result of being arrested without a warrant. However, in Texas, a peace officer with probable cause can arrest an individual without a warrant for any offense committed in his presence or within his view. Tex. Code Crim. Proc. Ann. Art. 14.01(b); *Hafford v. State*, 828 S.W.2d 275, 277 (Tex.App.–Ft.Worth 1992, *writ ref'd*), *cert. denied*, 507 U.S. 931, 113 S.Ct. 1313 (1993); *Adkins v. State*, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988). Probable cause exists if the facts and circumstances within the officer's knowledge were sufficient to warrant a prudent man to believe that the suspect had committed or was committing an offense. *Adkins*, 764 S.W.2d at 785.

In this case, Plaintiff's own testimony reveals that Officer Trawick was notified of the existence of water outside Plaintiff's residence after her water had been turned off by the City for nonpayment, and he then observed water accumulated outside of her home. Pursuant to § 51.311

of the Texas water code:

> If a landowner fails or refuses to pay a water assessment when due, his water supply shall be cut off and no water may be furnished to the land until all back assessments are fully paid. The discontinuance of water service is binding on all persons who own or acquire an interest in land for which assessments are due.

Tex. [Water] Code Ann. § 51.311 (Vernon 2002).

Plaintiff does not deny that the City turned off her water. Therefore, a reasonable person in Officer Trawick's position would have believed that Plaintiff was acting in violation of the law by having her water on after it had been officially turned off by the City for nonpayment. Plaintiff's own testimony reveals that Officer Trawick had probable cause to arrest Plaintiff and it was not unlawful for him to proceed with the arrest without a warrant. Without a showing of a lack of probable cause, Plaintiff has failed to allege facts establishing a violation of a constitutional right, as required to state a claim under § 1983.

Plaintiff also contends that Mayor Johnson abused his authority as mayor and violated Plaintiff's constitutional rights by ordering her arrest. Allegedly, Mayor Johnson instructed Officer Trawick to arrest Plaintiff if she refused to pay a fine for having her water on after it had been turned off by the City for nonpayment. While Plaintiff contends that her arrest was unlawful and caused her rights to be infringed upon, she does not point to any specific constitutional rights that were violated as a result of the mayor's actions in allegedly ordering her arrest. Plaintiff only asserts broad and conclusory allegations that her rights were violated as a result of an allegedly unlawful arrest. Therefore, Plaintiff's claims against Mayor Johnson should be dismissed for failure to state a claim.

Finally, Plaintiff is suing the City of Cuney for the alleged violation of her rights by city

officials. The law is well established that, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38 (1978). In order for a city to be subject to suit under § 1983, the action alleged to have caused a violation of constitutional rights must have occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690-91, 2035-36; *accord Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). In the present case, Plaintiff fails to allege any specific rights that were violated as a result of policies, official practices, or customs of the City of Cuney. Essentially, Plaintiff's only claim against the City is that it should be held liable for the independent actions of city employees. Without the assertion of specific city policies or practices that allowed for the violation of her constitutional rights, Plaintiff has failed to state a claim against the City of Cuney.

In this case, Plaintiff has failed to establish a violation of her constitutional rights as required to state a claim under § 1983. Plaintiff offers only conclusory allegations that the defendants caused her harm, and she has failed to establish specific facts showing a direct violation of her constitutional rights. *See Davidson v. State of Ga.*, 622 F.2d 895, 897 (5th Cir. 1980) (upholding the lower court's decision to dismiss for failure to state a claim where the plaintiff's case was based on conclusory allegations with no supporting factual evidence). Moreover, after Plaintiff initially filed her lawsuit she was given the opportunity to amend her complaint and then testify at a hearing concerning the facts of her case and the involvement of each individual defendant. However, Plaintiff still failed to allege facts sufficient to state a claim. When the allegations contained in a § 1983 claim fail to set forth specific facts which, if proved, would warrant the relief sought, the complaint may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Johnson v. Wells*, 566 F.2d

1016, 1017 (5th Cir. 1978); *Cook v. Whiteside*, 505 F.2d 32, 34-35 (5th Cir. 1974).

After reviewing the facts alleged by Plaintiff, it appears that both of Plaintiff's claims should be dismissed.  Plaintiff's claims arising out of the nonpayment of her water bills should be dismissed for failure to state a claim under 12(b)(6).  She has not alleged facts amounting to a violation of her constitutional rights.  Moreover, Plaintiff's defamation claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction over the subject matter.

After careful consideration, it is hereby

**ORDERED** that Plaintiff's Motion to Proceed *In Forma Pauperis* (docket #2) is **GRANTED**.  It is further

**ORDERED** that Plaintiff's motion for appointment of counsel (docket entry #5) is **DENIED**.  It is finally

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.  Any motion not previously ruled on is **DENIED**.

So **ORDERED** and **SIGNED** this **26** day of **July, 2006.**

JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE